# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD STRICK, M.D., INC. PROFIT SHARING PLAN AND RICHARD A. STRICK,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED RETIREMENT PLAN CONSULTANTS, INC.,<br><br>Defendant. | Case No. 2:16-cv-08206-AFM<br><br>**OPINION AND ORDER REGARDING DEFENDANT UNITED RETIREMENT PLAN CONSULTANTS' MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court is defendant United Retirement Plan Consultants' ("URPC") motion for summary judgment. (ECF No. 41.) After considering the parties' submissions regarding the motion, the Court rules as follows.

## I. BACKGROUND

This is an action by Plaintiffs Richard Strick, M.D., Inc. Profit Sharing Plan (the "Plan") and Richard A. Strick ("Dr. Strick") against Defendant URPC for alleged negligence and breach of contract, which they claim resulted in the theft of $154,928.00 from the Plan. Plaintiffs allege that URPC's failure to timely terminate

the Plan and distribute its assets left the Plan vulnerable to theft. As a result, Dr. Strick, believing he was communicating with a URPC employee, wired $154,928.00 from the Strick Plan to a criminal actor.

URPC has moved for summary judgment on all claims in Plaintiffs' complaint, and Plaintiffs have since abandoned the following claims: breach of fiduciary duty, misrepresentation, fraud and specific performance. (ECF No. 53 at 26-27.) Defendant has abandoned its sixteenth affirmative defense that Plaintiffs lack standing as the real party in interest. (ECF No. 53 at 27.) Remaining for decision by the Court is URPC's motion for summary judgment on Plaintiff's claims of negligence and breach of contract.

**II.     SUMMARY JUDGMENT STANDARD**

The Court shall grant summary judgment if the movant demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 587. At the summary judgment stage, a judge's function is not "to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment. *Id.* at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (holding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A court may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to identify specifically the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

///

///

///

///

## III. UNDISPUTED MATERIAL FACTS

The following material facts are undisputed by the parties and pertinent to the pending motion.

1. Benefit Planning, Inc. entered into a contract with Richard Strick, M.D. Inc. and the Richard Strick M.D., Inc. Profit Sharing Plan in 2001 to act as a third-party administrator for the Plan.

2. Benefit Planning, Inc. entered into a services agreement with Richard A. Strick M.D., Inc. and Richard A. Strick as Trustee for the Plan to serve as the third-party administrator for the Strick Plan in 2012 (the "2012 Services Agreement").

3. URPC is a successor entity to BPI.

4. Between 2013 and 2015, Dr. Strick used the email address rasmd5@aol.com to conduct the financial affairs for the Richard Strick M.D., Inc. Profit Sharing Plan that is a party to this lawsuit.

5. The assets of both the Plan and Dr. Strick's personal IRA were held at UBS.

6. Dr. Strick's financial advisor for the Plan and Dr. Strick's personal IRA was James Skinner ("Skinner") at UBS Financial Services.

7. On April 2, 2014, UBS received an email from an individual purporting to be Dr. Strick asking for an international wire transfer of Dr. Strick's money.

8. On April 2, 2014, Skinner contacted Dr. Strick to advise him that UBS had received a fraudulent email from someone pretending to be him.

9. On or about April 28, 2014, AOL issued a press release to its customers stating that it was investigating: "[A] security incident that involved unauthorized access to AOL's network and systems" following "a significant increase in the amount of spam appearing as 'spoofed emails' from AOL Mail addresses."

10. Dr. Strick confirmed receiving notices from AOL similar to the one issued on April 28, 2014, around the time this press release was issued.

11. Dr. Strick could not identify any security policies his business had in place to prevent IT security breaches between 2013 and 2015.

12. Since 2011, Dr. Strick changed the password to his AOL email account on two or fewer occasions.

13. Dr. Strick is unaware of any policies or procedures implemented with respect to the financial information of the profit sharing plan to ensure its information was kept secure.

14. URPC requires passwords to be changed every 90 days and prohibits passwords from being changed more than once per day. URPC locks out any user following four invalid password attempts for 30 minutes.

15. URPC prohibits employees from sharing URPC passwords with anyone, including supervisors, co-workers, family members, etc.

16. URPC's equipment is located in a secure locked facility with 24-hour surveillance. Only authorized personnel are allowed to enter the building and all of URPC's equipment is securely locked in cages to prevent access by anyone else.

17. URPC employs multiple layers of security, including different types of firewalls, intrusion protection equipment, and network access monitoring.

18. On March 12, 2014, Dr. Strick signed an authorization to terminate the Plan.

19. On March 31, 2014, Dr. Strick's CPA returned this authorization to URPC.

20. On January 6, 2015, a URPC employee, Viviana Isidoro ("Isidoro") sent Dr. Strick an email with a number of attachments, including an attachment for Dr. Strick to sign and return regarding whether Dr. Strick wanted to use Penchecks to distribute money to participants.

21. On January 9, 2015, Dr. Strick emailed a URPC employee, Charan Singh, ("Singh") and told him he had deleted the email Ms. Isidoro had sent several days earlier and asked that it be resent.

22. On January 14, 2015, Monique Roberts ("Roberts") of URPC sent Dr. Strick an e-mail that provided as follows: "Hi, Dr. Strick, Ending values have been updated as follows: Transfer $154,928.33 to PenChecks, the remaining $367,562.22 is your balance."

23. On February 23, 2015, Dr. Strick, using his AOL e-mail account rasmd5@aol.com emailed Singh at the e-mail address Charan.Singh@unitedretirement.com, which provided as follows: "The forms went to the employees, and Jim Skinner at UBS has the money set to disperse. Would you like to contact him to give him the information on its distribution, or should this be done another way?"

24. The next morning, a criminal actor purporting to be Singh e-mailed Dr. Strick at his AOL email account rasmd5@aol.com while using the e-mail address Charan.Singh@accountant.com and gave Dr. Strick wire transfer instructions directing that funds be wire-transferred to a bank account held by an entity named "The Freetonians ABS LLC" in North Carolina.

25. Not realizing that he was communicating with an imposter, Dr. Strick forwarded these wire-transfer instructions to UBS, asked Skinner if the instructions looked appropriate, and then authorized the wire transfer.

26. Prior to authorizing the wire transfer, neither Dr. Strick nor Skinner contacted anyone at URPC to confirm that the wire transfer instructions were accurate.

27. UBS effected a wire transfer in the amount of $154,928.33 on February 25, 2015, to "The Freetonians ABS LLC" in North Carolina.

28. Approximately one week after the February 25, 2015 wire transfer, a criminal actor, this time purporting to be Dr. Strick (using the AOL e-mail account rasnd5@aol.com), contacted Skinner at UBS and attempted to solicit a second fraudulent wire transfer of the Plan's funds.

29. Skinner became suspicious and forwarded the criminal actor's e-mail chain to Dr. Strick and URPC and the criminal plot was uncovered.

30. After URPC learned of the theft, it investigated to ascertain whether its system had been breached. Brian Webb, the Chief Information Officer of URPC, determined that URPC had not received any of the fraudulent emails that had been sent by [Obinna Izuchi] Onwuzurike prior to the theft occurring.

31. Plaintiffs do not know whether or how Dr. Strick's computer e-mail account was hacked.

32. URPC has never encountered a situation similar to what happened to the Strick Plan in this case.

## IV. DISCUSSION

### A. Plaintiffs' Negligence Claim

In *Bear Stearns & Co. v. Daisy Systems Corp.*, 97 F.3d 1171, 1175 (9th Cir. 1996) (citations omitted), the Ninth Circuit held that plaintiffs in a professional negligence claim have the burden to prove: "(1) the duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."[1]

URPC asserts that even if Plaintiffs could prove that URPC's negligence was the cause in fact of the theft from the Plan, URPC cannot be not liable because criminal actors were the superseding cause of the injury. (ECF No. 42 at 23-25.) A superseding cause is a "later cause of independent origin" that prevents an actor from being liable for harm caused by that actor's negligence. *Farr v. NC Machinery Co.*, 186 F.3d 1165, 1168-69 (9th Cir. 1999). A superseding cause is more than a subsequent act in a chain of causation, but must be "an act that was not reasonably

---

[1] Although Plaintiffs styled their claim as one for ordinary negligence, their allegations indicate that they are pursuing a professional negligence claim. In any event, California law considers ordinary and professional negligence to be essentially one form of action. *See Flowers v. Torrance Memorial Hospital*, 8 Cal.4th 992, 995 (1994).

foreseeable at the time of the defendant's negligent conduct." *USAir v. United States Dep't of the Navy*, 14 F.3d 1410, 1413 (9th Cir. 1994). An act is not foreseeable if, when "looking at the matter with hindsight, it seems extraordinary." *United States v. Pineda-Doval*, 614 F.3d 1019, 1029 (9th Cir. 2010). Where a third person's intentional tort or crime breaks the chain of causation, California law summarizes the principle of superseding cause as follows: "'The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the first person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.'" *Kane v. Hartford Accident & Indemnity Co.*, 98 Cal. App. 3d 350, 360 (1979) (quoting *Rest.2d Torts*, §448).[2]

    In the present case, it is undisputed that URPC had not previously encountered anything similar to the criminal theft of the Plan assets. This has been established in the depositions of URPC personnel and is not contested by Plaintiffs. (ECF Nos. 42-7 at 13, 14; 42-8 at 6; 42-9 at 4-8; 42-10 at 6.) Plaintiffs also have no information as to how the fraudulent scheme was perpetrated: They do not know whether Dr. Strick's email account was hacked, whether Dr. Strick was the victim of a "spoofing" scheme, or how the criminals gained access to Dr. Strick's email. (ECF No. 42-4 at 35-39.) In addition, Plaintiffs do not know how or when the criminals gained access to Dr. Strick's account and have no reason to believe that URPC was the source of the hack. (*Id.* at 38-39.) Moreover, it is undisputed that URPC took numerous steps to make it highly unlikely that it would be the victim of a fraudulent attack: URPC's equipment is located in a secure, locked facility with 24-hour surveillance; only

---

[2] On the question of foreseeability, URPC also cites to *Ann M. v. Pacific Plaza Shopping Center*, 6 Cal.4th 666 (1993). That case held that violent criminal assaults were not foreseeable to a landlord when the landlord had not received notice of any prior violent assaults on its property. 6 Cal.4th at 679.

authorized personnel are allowed to enter the building; all of URPC's equipment is securely locked in cages to prevent access by anyone else; and URPC employs multiple layers of security, including firewalls, intrusion protection equipment, strict password policies, and network access monitoring. (*See* Joint Appendix of Uncontroverted Facts D34 – D 55 at ECF No. 42-1 at 9-14.)

In response to this evidence of a lack of proximate cause, Plaintiffs contend, "[g]iven the prevalence of cybercrimes, the compromise of electronic data, spoofing, hacking, and the like, a jury can reasonably conclude the likelihood of a bad actor to impose himself into the exchange (albeit one sided as a result of UPRC's failure to respond to Dr. Strick's inquiries) was foreseeable." (ECF No. 42 at 30-31.) Yet Plaintiffs have offered no evidence to support this contention or the proposition that URPC realized or should have realized a likelihood that a criminal intrusion and theft might occur if the Plan assets were not distributed promptly. Put another way, Plaintiffs have provided no evidence that would permit a jury to find that the criminal act was not highly unusual, extraordinary, and unreasonably likely to happen. *See Schrimscher v. Bryson*, 58 Cal. App. 3d 660, 664 (1976). In the face of the evidence submitted with URPC's motion, it is insufficient for Plaintiffs merely to present a lawyer's argument without evidence. Plaintiffs must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. Rather, they must identify specific facts supported by admissible evidence that show a genuine issue for trial. *Id.* at 587. Because Plaintiffs have not done so on the element of proximate cause, URPC is entitled to summary judgment on the negligence claim. *See, e.g., Corales v. Bennett*, 567 F.3d 554, 573 (9th Cir. 2009) (affirming summary judgment on a negligence claim where plaintiffs "failed to raise a triable issue of fact as to the element of proximate cause").

///
///
///

**B. Plaintiffs' Breach of Contract Claim**

The elements of a breach of contract claim are "the existence of an enforceable contract, the defendant's breach, and damages to the plaintiff caused by the breach." *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017). URPC is entitled to summary judgment on Plaintiffs' breach of contract claim only if there is an absence of evidence to support Plaintiffs' case. *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1161 (E.D. Cal. 2009) ("Generally, whether a party has performed as required by a contract, or breached it, is a question of fact."). URPC's summary judgment on the breach of contract claim is based on its assertion that URPC did not breach any provision of the parties' contract.

The parties do not dispute that the 2012 Services Agreement ("Agreement") constituted an enforceable contract. They disagree, however, as to the scope and obligations of the Agreement. URPC argues that the Agreement creates a "clear delineation of the scope of services that URPC agreed to provide." (ECF No. 42 at 34.) Specifically, URPC claims that there is no provision or specific custom in regards to how a plan must be terminated or how quickly URPC must respond to inquiries. (*Id.* at 35-36.) While Section 1.4(f) of the Agreement provides that, upon request, URPC will "prepare plan termination documentation," it does not specify within what time frame the termination must be carried out. (ECF No. 42-14 at 2.) On the other hand, Plaintiffs contend that even if the contract does not explicitly say so, industry custom sets specific requirements for termination and the distribution of Plan assets, which includes timing requirements.

California law provides that "stipulations which are necessary to make a contract reasonable . . . are implied, in respect to matters [to which] the contract manifests no contrary intention." Cal. Civ. Code § 1655.[3] If the contracting parties are aware of an industry custom, or if the custom is so well known that the parties

---

[3] The 2012 Services Agreement is "governed by and construed and enforced in accordance with the laws of the State of California." (ECF No. 42-14 at 5.)

can be presumed to know of it, then the custom is an implied-in-fact term of the contract. *See May v. Morganelli-Heumann & Associates*, 618 F.2d 1363, 1368 (9th Cir. 1980) (summary judgment on breach of contract was improper where there existed a genuine dispute as to the "nature and existence of the applicable custom").

Here, there is substantial admissible evidence that a known industry custom requires distribution of all plan assets within 12 months of the termination date. URPC's own expert states that it is "the presumption that a plan should be distributed in [a] 12-month period" and this is considered "the acceptable period for terminating and distributing." (ECF No. 42-34 at 2.) Twelve months is also the period expected by the IRS for distribution of plan assets after a termination resolution. (*Id.*; ECF No. 42-71 at 1-2 ("Generally, the steps to terminate a retirement plan include . . . Distribute all plan assets as soon as administratively feasible (generally within 12 months)").) Although the UPRC expert notes that termination can take longer than 12 months, this is only "where justified by the facts." (ECF No. 42-34 at 2.) However, UPRC's corporate representative testified that in this case, there were no "intervening" events that would justify delaying the distribution. (ECF No. 42-65 at 2-3.) Thus, Plaintiffs have presented admissible evidence that raises a dispute of material fact regarding an industry custom – i.e., the maximum time for distribution of Plan assets should not exceed twelve months − that was so well known that it should be implied as a term of the Agreement.

Plaintiffs have also presented evidence of a dispute of material fact as to whether URPC breached the Agreement by failing to meet its obligation to complete distribution of the Plan assets within the 12-month period after termination. Specifically, Plaintiffs have submitted admissible evidence that Dr. Strick sent an email to Monique Roberts of URPC on December 23, 2013, requesting that the Plan be terminated (ECF No. 42-46) and that Dr. Strick signed a document that provided the Plan was terminated effective December 31, 2013 (ECF No. 42-19 at 5). Yet,

URPC did not complete the distribution of the Plan assets pursuant to the termination for more than a year and not until after the criminal theft in February 2015.

While URPC offers explanations for why it took this long to complete the distribution of Plan assets, Plaintiffs contest this with admissible evidence, including inadequate communications and lack of responsiveness by URPC regarding the Plan termination and the distribution of assets. (*See* ECF Nos. 42-66 (Dr. Strick authorizes use of PenChecks on 7/17/2008); 42-46 (Dr. Strick informs URPC on 12/23/2013 that he wishes to terminate the Plan); 42-61 at 1-2 (termination of Plan effective 12/31/2013); 42-47 (Dr. Strick's CPA follows up on 2/11/14 re the request to terminate the Plan); 42-48 (another follow up from Dr. Strick's CPA on 3/11/14); 42-19 (URPC first responding on 3/11/2014 to Dr. Strick's intent to terminate); 42-51 (Dr. Strick's CPA inquires on 12/19/2014 about the status of distribution of Plan assets); 42-52 (URPC first prepares distribution forms as of 12/19/04); 42-54 (Dr. Strick's CPA again inquires about status as of 12/24/14); 42-55 (URPC apologizes for lack of clarity and responsiveness on 12/24/2014); 42-20 (URPC sends documents on 1/6/2015 to be completed by Plan participants for distributions); 42-56 (Dr. Strick inquires on 2/2/15 on how to get check to other participants); 42-25 at 2 (Dr. Strick asks questions on 2/23/2015 re what information should be provided regarding distributions); 42-65 at 2-3 (UPRC representative testifies that the timing of its handling of the Plan termination and distribution of assets was not acceptable and no intervening events were know that would justify this timing).)

In sum, viewing this evidence and making reasonable inferences in the light most favorable to Plaintiffs, the Court finds that material issues of fact exist as to whether URPC breached the Agreement, and those disputed issues of fact prevent summary judgment in favor of URPC on Plaintiff's breach of contract claim. *See Anderson*, 477 U.S. at 248.

\* \* \*

**IT THEREFORE IS ORDERED,** for the reasons stated herein, that URPC's motion for summary judgment is **GRANTED** as to Plaintiffs' negligence claim but **DENIED** as to Plaintiffs' breach of contract claim. In addition, because of the parties' abandonment of certain claims and defenses, URPC's motion for summary judgment is **GRANTED** regarding Plaintiffs' claims of breach of fiduciary duty, misrepresentation, fraud, and specific performance, and URPC's motion for summary judgment on its affirmative defense challenging Plaintiffs' standing is **DENIED**.[4]

DATED: 7/13/2018

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court has considered the evidentiary objections made by the parties. To the extent, the Court has cited herein any of the challenged evidence, the objections to that evidence are overruled. The remaining objections are denied as moot.